UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSE R. RIVERA,<br>        Plaintiff,<br><br>        v.<br><br>PATRICIA COYNE-FAGUE, Director,<br>R.I. DEPT.OF CORRECTIONS,<br>WILLIAM A. DEVINE, Warden,<br>JUSTIN BERK, M.D., Medical<br>Director, CAPTAIN KABBAS,<br>CHRISTOPHER SALAS, M.D.,<br>THERESA DOE, MELISSA WALSH,<br>Health Unit Clerk,<br>        Defendant. | C.A. No. 23-00418-MSM-PAS |

**ORDER**

Mary S. McElroy, United States District Judge.

All defendants, current or former Department of Corrections employees, have moved to dismiss this Complaint which alleges that inadequate medical care afforded the plaintiff at the Adult Correctional Institutions, accompanied by an attitude evidencing deliberate indifference to serious health needs, constituted cruel and unusual punishment in violation of the Eighth Amendment. Mr. Rivera claims federal question jurisdiction, 28 U.S.C. § 1332, and a cause of action pursuant to 42 U.S.C. § 1983, for denial of civil rights by persons acting under color of state law.

The Court GRANTS the Motion to Dismiss (ECF No. 25) as it pertains to all defendants in their official capacities, and defendants Coyne-Fague, Devine, and

1

Kabbas in their individual capacities.  It is also GRANTED as to defendants Doe and Walsh in their individual capacities.  Finally, it is GRANTED to defendants Berk and Salas in their individual capacities, with leave to amend.

## I.    DISCUSSION

The Plaintiff puts forth four separate claims, each alleging inadequate medical treatment.

### A.   COVID lung injury.

Two of the claims are closely related.  According to the complaint, Mr. Rivera tested positive for the coronavirus at the Adult Correctional Institutions ("ACI") but, without being symptomatic, he was moved to a cell containing another COVID-positive inmate.  As a result, he complains, he became sicker and developed very serious symptoms that caused his immediate hospitalization for four months with a collapsed lung and breathing difficulties.  He was then moved to a rehabilitation center for five months where he required a breathing machine constantly.  When he was returned to medium security, it was recommended that he see a breathing specialist, but the ACI allegedly delayed acting on that need for 17 months.  (ECF No. 1 ¶¶ 13-14, 21.)

An Eighth Amendment claim is made out by a showing that prison officials were deliberately indifferent to the serious medical needs of prisoners in their custody.  *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).  The claim has both subjective and objective components.  The objective prong is met by a showing of a serious

medical need and the subjective prong is met by a showing of deliberate indifference. *Martinez v. Blanchette,* C.A. 14-537L, 2015 WL 9315562, at *3 (D.R.I. Oct. 29, 2015), *adopted* 2015 WL 9412531 (Dec. 22, 2015)). While "deliberate indifference" has been compared to "shock[ing] the conscience,"[1] *Torraco v. Maloney,* 923 F.2d 231, 234 (1st Cir. 1991), the application of law to facts indicates the standard is not quite so extreme as those words would imply.

There is no question that Mr. Rivera has pleaded a serious medical condition and serious medical needs. His bout with COVID, he alleges, left him with permanent breathing deficiencies and injuries. The issue, however, is whether he has made out a plausible claim that the prison officials he sued are liable for that result. *Ashcroft v Iqbal,* 556 U.S. 662, 678 (2009).

With respect to the initial decision to require Mr. Rivera to co-inhabit a cell with another positive-testing inmate, this Court has commented before on the difficult decisions prison officials were required to make concerning whether to implement "cohort-isolation" (putting positive inmates together but separate from others) versus "quarantine-in-place" (not moving positive-inmates through cellblocks, even to separate them from non-positive inmates). *DeBritto v. Coyne-Fague,* No.

---

[1] "Shocks the conscience" was coined to denote violations of due process caused by unreasonable searches and seizures prior to the incorporation of the Fourth Amendment into the Fourteenth and thus referred only to extreme government action. *Rochin v. California,* 342 U.S. 165, 172 (1952). The Eighth Amendment requirement, by comparison, as applied by courts, does not compare to the stomach pumping at issue in *Rochin,* the hallmark of which was the actual violence done to the unconsenting defendant's body by the forcible insertion of an emetic solution through a tube.

1:21-cv-00017-MSM, 2023 WL 4887558, at *3 (D.R.I. Aug. 1, 2023), *aff'd* No. 23-1656 (1st Cir. Mar. 21, 2024) (choice to put positive-testing prisoners together did not meet subjective prong of deliberate indifference).

Many cases challenging COVID-19 protocols in prisons have been litigated. Overwhelmingly, prison officials who enacted policies in a considered attempt to minimize the risk of contagion, have been found not to have met the standard for reckless or deliberate indifference. *See, e.g.*, *Muata v. Hicks,* No. 21-3210, 2022 WL 2526692, at *1 (3rd Cir. July 7, 2022) (East Jersey State Prison at Rahway); *Valentine v. Collier,* 978 F.3d 154, 164 (5th Cir. 2020) (Wallace Pack Unit of Texas Dept. of Crim. Justice); *Robinson v. Washington*, No. 22-136, 2022 WL 855275, at *20 (6th Cir. May 5, 2023) (Kinross Correctional Facility, Michigan); *Rowe v. Buss,* No. 21-1182, 2021 WL 5232512, at *6 (7th Cir. Nov. 10, 2021) (Indiana State Prison); *Swain v. Junior,* 961 F.3d 1276, 1288 (11th Cir. 2020) (Miami Metro West Detention Center).

Mr. Rivera's second theory of liability for the seriousness of his present condition meets with more success. The defendants, at least in their response to the Motion to Dismiss, do not question the assertion that 17 months passed without the prison following through on the recommendation by a pulmonary specialist, Dr. Dora Szkwarko, that Mr. Rivera be seen by a pulmonologist as soon as he was returned to prison. (ECF No. 1, ¶ 21.) It is not clear from the Complaint whether it was 17 months *after* Mr. Rivera's return to prison following four months of hospitalization and five months in rehab, or 17 months after he was initially rushed to the hospital. Even if the latter, that is a long time, and the defendants' response to the claim that the delay

showed deliberate indifference to a clearly serious medical need is that "although Plaintiff did not visit a Pulmonary Specialist as quickly as he would have liked to, Plaintiff alleges he did see a Pulmonary Specialist within the timespan of seventeen months." (ECF No. 25 at 9-10.)  While delay itself is not necessarily actionable, it may violate the Eighth Amendment if it creates a "substantial risk of serious harm." *Chambers v. NH Prison,* 562 F. Supp.2d 197, 200 (D.N.H. 2007).  It is true that the plaintiff has not specified in any detail how the delay itself contributed to the seriousness of his injuries, but this is precisely why a *pro se* prisoner should be given some latitude in his pleadings.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (*per curiam*).  Mr. Rivera is incarcerated, with access only to the medical staff he is suing. He is a layman.  It is not an unreasonable inference for even lay people to draw, that in a situation where a person requires a mechanical apparatus to breathe and hospitalization for nine months, and thereafter still requires a breathing machine, a delay of even eight months without being *examined* by a pulmonologist could exacerbate the injury.  At the very least, it is a fair inference that such a person would be in continued distress during that period.  Mr. Rivera is entitled to discovery and an opportunity to marshal evidence that the neglect of pulmonary treatment caused him unnecessary pain and injury.

## B.  "Fictitious" Medical Records

Mr. Rivera alleges that when he was transferred from the ACI to Kent County Hospital, the records that accompanied him falsely indicated he was taking the prescription medicine, Otezla.  (ECF No. 1 ¶ 17.)  There are no factual assertions in

the Complaint, however, indicating that the inaccuracy of that entry caused any injury, an essential element of any claim for relief. Since Mr. Rivera's assertion of liability on the part of defendants Doe (medical records staff) and Walsh (who maintains the medication list), seems predicated solely on the inaccurate medical record entry, the Complaint is DISMISSED in its entirety against those two defendants.

### C. Medication for Psoriasis

Mr. Rivera alleges that he suffers from severe psoriasis. Back in 2020, he alleges he was told by a nurse practitioner at the ACI that he would start receiving Otezla in a matter of weeks. (ECF No. 1 ¶ 16.) He was again prescribed Otezla on May 2023, by another nurse practitioner, but has never received it. *Id.* ¶¶ 18-19. The Complaint alleges that he has *never* received medication for his psoriasis, Otezla or any other. *Id.* ¶ 20. The defendants complain that there are no allegations that any state defendant was aware of the need for medical treatment for Mr. Rivera's psoriasis and were not involved in prescribing it. Mr. Rivera has not sued, nor does he further identify, either nurse practitioner Warren or Porter, both of whom he credits with telling him Otezla would be administered. But he dates his interaction with Nurse Warren as about October 30, 2020, and he was not rushed from the ACI to Kent Hospital until December 15, 2020. It is, therefore, a fair inference that she is part of the ACI medical staff. In addition, he alleges that a dermatologist recommended Otezla, or a Humira injection, on October 26, 2020. Similarly, the interaction with Nurse Porter occurred on May 3, 2023, by which time he was back

6

in prison.  In addition, it is clear from the allegation about the "fictitious" medication entry that medical records accompanied Mr. Rivera between the ACI and outside hospitals, so it is not unreasonable to infer that the medical staff at the ACI was aware that Otezla had been prescribed.

A disagreement about the adequacy of medication can illuminate the difference between an Eighth Amendment claim and a non-constitutional claim for medical malpractice or negligence.  Disagreements about proper medical care do not lay a foundation for Eighth Amendment violations.  *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) (upholding dismissal of claim with a finding that a physician's rejection of a prisoner's desire for physical therapy, drugs, and rest was merely a disagreement about the proper course of treatment and not deliberate indifference).  Nor, generally, do disagreements about the adequacy of the medical treatment.  *E.g., Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) (finding that no deliberate indifference existed where there was no evidence that physical therapy was inadequate treatment for a wheelchair-bound prisoner).  But Mr. Rivera has alleged that he received *no* medication for serious psoriasis that plagued him for years.  The failure of the institution to follow through with a prescribed treatment can constitute deliberate indifference to a serious medical need.  *Nolet v. Armstrong,* 197 F. Supp. 3d 298, 306 (D. Mass. 2016).  *See Dadd v. Anoka County.,* 827 F.3d 749, 757 (8th Cir. 2016) ("When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow.").  While it may be a closer question than is presented by Mr. Rivera's other claims, the fact that the same

defendants are implicated mitigates toward permitting this theory of liability to go forward with the other Eighth Amendment claim.

### D. Equal Protection

Mr. Rivera alleges a denial of equal protection because other inmates suffering from psoriasis have been treated. This bare assertion does not come close to stating a plausible claim for a class-of-one equal protection claim. *Buchanan v. Maine,* 469 F.3d 158, 178 (1st Cir. 2006).

### E. Failure to Train

Mr. Rivera maintains that supervisors Coyne-Fague, Devine, Berk and a "Health Supervisor" (this may be nurse practitioner Walsh) failed to adequately train medical personnel at the ACI. This is another conclusory allegation, devoid of factual support, that fails to state a claim upon which relief can be granted. The Complaint is DISMISSED with regard to this theory of liability.

### F. Supervisory Liability

Liability on the part of supervisors in a § 1983 case must be predicated on the supervisor's own conduct; there is no *respondeat superior* liability as there might be in an ordinary tort case. *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006). The Complaint does not allege any actions at all taken by defendants Coyne-Fague, Devine, or Kabbas, nor does it allege that they were aware of Mr. Rivera's medical needs. All claims against them are DISMISSED.

### G.  Damages

The claim for damages against these state employees in their official capacities is DISMISSED as beyond the relief available in a § 1983 action.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989).

## RECAP

At this point, the Complaint is left in an anomalous situation.  The Court believes that Mr. Rivera has met the standard for pleading a plausible claim of an Eighth Amendment violation with respect to both the failure to attend to his pulmonary condition and the failure to treat with any medication his psoriasis over a long period of time despite at least two medical determinations that he should receive medication.

However, all defendants except doctors Berk and Salas in their individual capacities, have been dismissed.  A complaint obviously cannot survive with no viable defendants and the Court below addresses the viability of Drs. Berk and Salas as defendants.

### H.  Defendants Berk and Salas in their Individual Capacities

In a document entitled "Affidavit," Mr. Rivera alleges that Drs. Berk and Salas "were well aware of my serious condition."  (ECF No. 27 ¶ 8.)  He asserts that when he returned to medium security from rehab, "the medical staff" was informed that he needed to see a pulmonary specialist.  That allegation is immediately followed by one that claims both doctors were aware of his condition and that the situation was

9

documented in ACI medical records. (ECF No. 26 at 2, 3.) The only specific allegation is that Dr. Salas was involved in attempts to have him seen by a specialist "but did not follow through." To say these allegations are sketchy is to give them the benefit of the doubt. It is not evident from the Complaint that Mr. Rivera blames Dr. Berk for anything but being the Medical Director. Dr. Salas was presumably a treating physician at one time, but that is the only fair implication from the Complaint.

The Complaint sufficiently pleads that Mr. Rivera had two serious medical conditions that may have been unconstitutionally ignored. But the allegations are not specific or substantial enough to support a conclusion that these doctors were aware of his medical needs – whether for pulmonary specialist scrutiny or medication for psoriasis – *and* were deliberately indifferent to them.

The Court will allow Mr. Rivera a period of thirty (30) days in which to amend his Complaint – by following the procedures outlined in Fed. R. Civ. P. 15 – to adequately plead an Eighth Amendment violation against Dr. Berk, Dr. Salas, or both, limited to the delay in having him examined by a pulmonology specialist and to the failure to medicate his psoriasis in spite of specific recommendations by ACI medical personnel that he receive Otezla.

IT IS SO ORDERED:

_____

Mary S. McElroy,
United States District Judge
Date:    March 29, 2024